UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 3:18-cr-0021-JD |
| ) | |
| JAMES S. KINDIG ) | |

## **GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America by Thomas L. Kirsch II, United States Attorney for the Northern District of Indiana, through John Maciejczyk, Assistant United States Attorney, and submits the following memorandum in preparation for the sentencing hearing in this case.

1.  The Final Presentence Report ("PSR"), is dated February 13, 201. R. 51. Neither party objected to the final report. R. 52.

2.  The PSR calculates a guideline range for this defendant of 78 to 97 months. PSR ¶ 69. The fine range is from $25,000 to $250,000. PSR ¶ 77. The PSR reports that the defendant does not have the ability to pay a fine, PSR ¶ 65. He is subject to the Justice for Victims of Trafficking Act of 2015 ("JVTA"), which imposes a mandatory $5,000 fine on any non-indigent person convicted of this type of offense. PSR ¶ 76. He is required to pay a $100 mandatory special assessment. *Id*. Supervised release upon completion of the

sentence of confinement is from 5 years to life. ¶ 71.

3. Restitution is mandatory. ¶ 79. The government has filed a separate restitution request under seal to protect the identity of the victims.

4. In the plea, the government that "the United States Attorney shall recommend that I be sentenced to a period of imprisonment at the middle of the applicable guideline range, said guideline range to be determined by the Court." As detailed below, the government recommends a sentence of 87 months, to be followed by 5 years supervised release, no fine, restitution as determined by the court, no JVTA fine, and a $100 special assessment.

5. The United States Sentencing Commission Sourcebook for 2017[1] states that in 2017, a total of 1,809 child pornography offenders were sentenced. 2017 Sourcebook, Table 27A. The mean sentence for these offenders was 147 months, and the median (average) sentence was 97 months. *Id.* Table 13. Of these, 525 (29 %) received in-range sentences and 7 (2.5%) received above guideline sentences. The remaining 1,277 (68.5%) received below guideline sentences. Of these below guideline sentences, the median departure in months is broken down according to (a) government sponsored below range cases (N=426): 55 months departure, 40% reduction, 70 month

---

[1] The 2018 sourcebook has not yet been published.

2

average sentence, *id.* Table 31; (b) downward departures from guideline range (N = 26), 34 months departure, 35.1% reduction, 63 month median sentence, *id.* Table 31A; (c) downward departure with Booker/§ 3553 (N= 15), 51 month departure, 42.9 percent reduction, 60 month average sentence, *id.* Table 31(B); below guideline range with Booker/§ 3553 (N = 701), 51 month departure, 46.6 percent reduction, 72 month median sentence, *id.* Table 31(C); (d) all remaining below guideline range cases (N = 11), 60 month departure, 26.9% reduction, 180 month average sentence. *Id.* Table 31(D).

6. Attachment A is a table which shows the mean and median sentences for all child pornography offenders, the percentages of above, within, and below range sentences, and the median sentence and months decrease from 2008 to 2017. The table shows that about a third of sentences are within the guideline range, and two thirds below. However, the mean and median for all sentences have actually increased since 2008.

7. Unfortunately, these statistics do not have an overall average sentencing comparison to the guideline range for above, within, and below range sentences. With approximately 1/3 of offenders receiving in range sentences, and 2/3 of offenders receiving reduced sentences, without a statistician, the government can only estimate loosely that the typical child pornography offender receives a sentence between 20 to 30 percent below the

3

guideline range currently. However, these statistics also do not break the sentences down by offense of production, distribution, receipt and possession. Presumably, the guideline sentences which constitute 1/3 of child pornography sentences would be assessed in the more serious cases involving production and distribution, and the below guideline sentences would be generally assessed in receipt and possession cases.

8. A sentence that is 25% below the bottom of the guideline in this case would result in a sentence of 58 months.

## 18 U.S.C. § 3553(a) Factors

Factors to be considered include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> (5) any pertinent policy statement—
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

4

conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Of these factors, the most pertinent appear to be the following:

- As pointed out by the PSR, one aspect of the defendant's conduct is aggravating: *"two aggravating factors may be the length of time the defendant was accumulating child pornography and the amount of pornography collected as the defendant's collection included lengthy videos whose conversion into images far exceeds the 600 images needed to receive the maximum enhancement pursuant to U.S.S.G. ' 2G2.2(b)(7)."* PSR, ¶ 84. The offense conduct notes that "Using computer software, investigators determined that this specific internet address had been viewed approximately 2,300 times on the eMule network by at least 73 other computer users. Between January 2, 2016, and September 11, 2017, law enforcement determined the [defendant's] targeted internet address was reporting possible child pornography files." PSR, ¶ 13.

- With regard to mitigating factors, the PSR notes: *"The defendant appears to be the primary care provider for his mother. He has previously cared for his father before his father passed away.*

5

*He has a good relationship with his disabled daughter. He completed high school and has held regular employment. He has not abused drugs in more than twenty years. Lastly, this will mark the defendant's first felony conviction."* The government acknowledges that the care of his mother is a significant issue, and can be considered pursuant to the guidelines, which state that "loss of caretaking" can be a factor in the following circumstances:

(i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
(ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
(iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
(iv) The departure effectively will address the loss of caretaking or financial support.

USSG § 5H1.6, Application note 1B. Although letters from the defendant's two sisters state that "If James were to be incarcerated it would be a huge strain on me as well as the rest of his siblings" (Melinda), R. 56-2 at 4, and "I am very grateful that my brother is there to take care of her as I along with my other siblings have families and jobs." (Kristina) *Id.* at 5. The standard here is not

6

inconvenience, but "irreplaceable to the defendant's family." The PSR shows that the defendant has five siblings: "Carlton Kindig III (59), Melissa Fries (54), Andrea Alexander (47), Melinda Davis (40), and Kristina Henback (33)." PSR ¶ 49. There has been no showing that the loss of defendant's caretaking to his mother would be other than inconvenient, possibly very inconvenient, to his siblings and certainly not "irreplaceable."

- The *need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and to afford adequate deterrence to criminal conduct*. These factors in most cases are served by a guideline sentence, however, as discussed below, child pornography guidelines are unusual in their severity. A sentence <u>below</u> the guidelines would certainly not be out of step with other courts, but a sentence of no incarceration for this defendant would not reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence to criminal conduct. Mr. Kindig is not particularly unusual with regard to child pornography offenders for having no criminal history and no known "hands on" offenses against children. That should not shield him from incarceration.

7

- The *need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.* Given the national practice of awarding below guideline sentences in this type of case, a 25% below guideline sentence, or 57 months, would serve this goal. The defendant's suggestion of no time served would not at all serve this goal. In this court alone, the most lenient child pornography sentence imposed was 24 months incarceration in *United States v. Ronald Hinton*, 3:16-cr-00097-JD. In that case this Court sentenced a possession defendant, a retired Army Sergeant, to 24 months, despite his honorable military career, lack of any criminal history, no history of hands on offenses, and the need to care for his teenage daughter due to his wife's scheduled deployment to the Middle East. Similarly, in *United States v. Jose Diaz*, 3:18-cr-00100-JD, this Court recently sentenced a possession defendant who had no criminal history, no history of hands on offenses, and a smaller collection of child pornography than Kindig to 46 months imprisonment. A sentence below either of these would be entirely inconsistent and an "unwarranted . . . disparity among defendants with similar records who have been found guilty of similar

8

conduct."

## U.S.S.C. 2012 Report Recommendations

The 2012 U.S.S.C. Report on Federal Child Pornography Offenses, which reviewed and recommended changes to the child pornography guidelines suggested the following factors be considered in imposing sentences in §2G2.2 cases:

> 1) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology);
> 2) the degree of an offender's engagement with other offenders — in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and
> 3) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

Report at 320. Because the defendant was running a peer-to-peer system available to investigators for a significant period "[b]etween January 2, 2016, and September 11, 2017," PSR ¶13, he "engage[d] with other offenders." While the defendant's collection contained a significant amount of child pornography involving minors under the age of 12 and sadistic content, there is no indication that he "organized, maintained, and protected his collection over time, including through the use of sophisticated technology." Nor does the

9

government have information that the defendant has a "history of engaging in sexually abusive, exploitative, or predatory conduct" with regard to minors. The polygraph report confirms this.

<u>Victim Impact</u>

The government has filed 18 victim impact statements.  R. 58.  These statements describe in heartbreaking detail the lasting and continuing impact that the circulation of child pornography has on the victims. One of these relates the trauma as a result of the exploitation, not just from the original offense, but from knowledge that others are viewing their images online, as expressed by her mother:

> Aside from the horrible truth that my daughter was horrifically abused from the ages of four to seven and her innocence was literally stolen, one of the ongoing concerns that plagues my child is that literally any person she meets on the street (or any teenage boy in her class) might have seen photos of her being cruelly debased and abused.  These images have taken on a life of their own as they are passed from pedophile to pedophile.  Thousands of people have been arrested with her photos in their possession.  My daughter fears that people will recognize her from the photographs and will find out where she lives and come harm her or her family.  My daughter is an intelligent child and she knows that these men are pleasuring themselves sexually while looking at her picture.  It has created a lot of anxiety, damage to her self-esteem, and irrational fears that will require a lifetime of support/counseling to manage.
>
> In her mind, every man she sees is a potential threat (not just her original abuser).  Imagine being in fear of every single person you meet.  Imagine that a boy asks you to go to the middle school dance.  Is he just dating you because he has seen your photos and wants to sexually assault you?  Many of her peers are quite vocal about viewing pornography on their computers.  She worries that one of them will see her photos.  In the past, it was easier to quiet her fears, but now she realizes that the Internet can be used to 'find anyone, anywhere'.  Always lurking in the background of her mind, is the possibility that she will be identified or attacked <u>by a pedophile who has become obsessed with her pictures.</u>

 "Angela" victim impact statement.

10

A recent article published in the Journal of Child Abuse & Neglect reports on the lasting impact of child pornography in a study of 133 adult survivors. Gerwirtz-Meyden, Walsh, Wolak, Finkelhor, *The Complex Experience of Child Pornography Survivors*, 80 Child Abuse & Neglect 238-248 (April, 2014). The common themes discovered by the study were:

- Feelings of guilt and shame that the images are being circulated;
- Feelings that someone would think that they were willing participants;
- Concern of being recognized in public;
- Concern of being recognized by friends or acquaintances;
- Refusing to be photographed by family or friends;

Id. at 242. Many reported that "they live in constant fear their images will surface and will be viewed by people they know, their family, or their children. Fears of the images and films circulating impacted their ability to continue with their lives or to let go of the past. Many survivors were triggered daily by the fear of being recognized or exposed." *Id.* at 244. Many survivors also felt "haunted" by the circulation of the images:

> Experiencing CP seems to encompass two stages of victimization. One, from a legal point of view, when the abuse is perpetrated and recorded and one from a psychological point of view, implying the ongoing vulnerability of survivors and the unknown aspect regarding the circulation of the images. Participants discussed the life-long vulnerability as a result of the images. According to them, while the abuse per se ended, the images will forever be out there, and they felt as

11

> if they were haunted by them. Even years after the crime, survivors were worried that the images might be seen by other people or family members, that they would be recognized, or that the images would be used by sex offenders for masturbation or to entice other children into abusive situations. For many respondents, the images were a concrete reminder of their victimization that could reveal their past, or be used for criminal purposes without warning to them and outside of their control.

Id. at 246.  Other studies also support the conclusions of the Gerwirtz-Meyden study.  *See, e.g.*, Canadian Centre for Child Protection (2017). *Survivor's survey*. Retrieved from https://www.protectchildren.ca/pdfs/C3P_ Survivors SurveyExecutiveSummary2017_en.pdf; Martin, J. (2014). *"It's just an image, right?": Practitioners' understanding of child sexual abuse images online and effects on victims*. Child & Youth Services, 35, 96–115, http://dx.doi.org/10.1080/0145935X.2014.924334.

In this regard, in his own letter to the Court the defendant expresses a great deal of remorse as to the effect of his crime on himself and the potential effect on his family.  R. 56-2 at 1.  He says he "has had a lot of time to think about what I have done" and that it has "ruined my self image and my pride, hopefully not my life."  *Id*.  However, his letter only briefly mentions the child victims of his offense:  "I know now how ignorant I was to the fact I was hurting myself, and the children who were victimized."  *Id*.  Based on this minimal mention, the defendant still doesn't seem to fully understand the

impact of his crime on children.

## Conclusion

Based on the above, the government requests that the defendant be sentenced to 57 months, no fine, no JVTA assessment under 18 U.S.C. § 3014(a) of $5,000 should be imposed, that he receive 5 years supervised release, and be assessed a $100 special assessment.  The government also requests the Court to award restitution for the victims as requested in the government's separate filing.

        Respectfully submitted,

        THOMAS L. KIRSCH II
        UNITED STATES ATTORNEY


BY:   /s/ John Maciejczyk
       John Maciejczyk
       Assistant United States Attorney
       M01 Robert A. Grant Federal Bldg.
       204 S. Main Street
       South Bend, Indiana  46601
       Tel:   (574) 236-8287
       Fax:  (574) 236-8155
       E-mail: John.Maciejczyk@usdoj.gov